IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: ASBESTOS PRODUCTS | : | CONSOLIDATED UNDER |
| LIABILITY LITIGATION (No. VI) | : | MDL DOCKET NO. 875 |
| | : | |
| VARIOUS PLAINTIFFS | : | |
| | : | Certain cases on the Maritime |
| v. | : | Docket ("MARDOC"), listed in |
| | : | Exhibits "A" and "B," attached |
| VARIOUS DEFENDANTS | : | |

C O R R E C T E D   M E M O R A N D U M[1]

EDUARDO C. ROBRENO, J.                          August 13, 2012

TABLE OF CONTENTS

I.    INTRODUCTION.............................................2
II.   BACKGROUND...............................................3
III.  LEGAL STANDARD....... ...................................9
      A.   Motion to Dismiss..................................9
      B.   Applicability of Maritime Substantive Law.........10
           1.   Locality Test................................12
           2.   Connection Test..............................12
      C.   Applicability of Federal Procedural Law...........13
IV.   DISCUSSION..............................................15
      A.   Non-Cognizability of Asymptomatic Conditions.......16
           1.   Connection Between the Jones Act, Maritime
                Law, and FELA................................16
           2.   Requirement of an "Injury" under the Jones
                Act, Maritime Law, and FELA..................18
           3.   The Trend Among the States...................22
           4.   Public Policy Considerations.................24
      B.   Alternative Vehicles Suggested by Defendants to
           Dispose of the Claims.............................25
           1.   Ohio Asbestos Litigation Reform Act..........25
           2.   Administrative Order No. 8...................28
      C.   Applying Maritime Law to Instant Claims...........30
V.    CONCLUSION..............................................31

_____

    [1]    The only correction in this Memorandum in relation to
the original Memorandum, No. 02-875 (E.D. Pa. Aug. 7, 2012), ECF
No. 1754, is the addition of the word "not" after the words
"Plaintiffs who are," on page 31.

## I.    INTRODUCTION

Before the Court are 5,464 motions to dismiss in approximately 2,672 cases that are part of MDL 875,[2] the consolidated asbestos products liability multidistrict litigation pending in the District Court for the Eastern District of Pennsylvania.

All of the Plaintiffs[3] whose cases are subject to the present motions to dismiss are or were merchant marine seamen during the time of their alleged exposures to asbestos. Some claims are Jones Act claims under 46 U.S.C. §§ 30101-30106 (2006),[4] while others sound in general maritime law.

----

[2]    Most cases on the maritime docket involve multiple defendants, and in some cases more than one defendant filed a motion to dismiss.

[3]    Plaintiffs in these cases include former merchant marines, representatives, survivors, and spouses ("Plaintiffs" or "the MARDOC Plaintiffs").

[4]    The Jones Act states, in relevant part:

> A seaman injured in the course of employment or, if the seaman dies from the injury, the personal representative of the seaman may elect to bring a civil action at law, with the right of trial by jury, against the employer. Laws of the United States regulating recovery for personal injury to, or death of, a railway employee apply to an action under this section.

46 U.S.C. § 30104 (supp. 2011). While several moving Defendants are employers against whom Jones Act claims could be brought, others, such as Crane Co., are manufacturing Defendants. Under the plain language of the statute, Jones Act claims cannot be brought against manufacturing Defendants. Rather, Plaintiffs' claims against manufacturing Defendants are general maritime law

2

Defendants in these cases fall into three categories: "(1) ship owners or ship operators of the vessels on which the injured parties were employed; (2) product manufacturers whose asbestos-containing products were used aboard those vessels; and (3) railroad companies whose railcars were transported on those vessels." Pls.' Resp. in Opp'n at 3, No. 02-875 (E.D. Pa. Feb. 8, 2012), ECF No. 729.


## II.  BACKGROUND

These motions to dismiss have been filed in cases that are on the Court's MDL 875 maritime docket ("MARDOC"). The MARDOC cases account for approximately 3,500 cases in MDL 875, the largest group of cases that still remains on this multidistrict litigation docket.

On June 27, 2011, the MARDOC cases were referred to the Honorable Elizabeth T. Hey, U.S. Magistrate Judge, for oversight and supervision. On October 4, 2011, both Judge Eduardo C. Robreno and Magistrate Judge Hey signed Administrative Order No. 25 ("AO 25"),[5] with the goal of "facilitat[ing] the expeditious

---

claims. For purposes of the legal questions before the Court today, this is a distinction without a difference.

[5]    AO 25 is available at: http://www.paed.uscourts.gov/documents/MDL/MDL875/AO25%20(MARDOC%20ONLY).pdf

3

movement of pending cases on the MDL 875 (MARDOC) docket[,]" some of which had been pending for more than twenty years.[6]

AO 25 was created with the goal of streamlining the MARDOC litigation in light of the vast number of cases on the MARDOC docket, and in designing AO 25, the Court used as a model the relevant parts of Amended Administrative Order No. 12 ("AO 12").[7] AO 25 sets forth not only procedural and filing requirements, but also ordered that by October 17, 2011, Plaintiffs' counsel to file a "certification in each plaintiff's case that they have provided all defense counsel in that case (1) a copy of the medical report or opinion containing a physician's diagnosis of the plaintiff with the asbestos-related disease or injury alleged in the complaint." Admin. Order No. 25 at § B(2), No. 02-875 (E.D. Pa. Oct. 5, 2011), ECF No. 552 [hereinafter "AO 25"]. Therefore, Defendants in the present cases have been in possession of Plaintiffs' medical reports or opinions since October 17, 2011, or earlier.

---

[6]     The MARDOC docket has a long and tortuous history. The docket originally consisted of approximately 54,000 cases and millions of claims filed primarily in the Northern District of Ohio. The cases were placed in suspense and lay dormant for several years before being transferred to MDL 875 where, in 2008, cases were brought onto the active docket. Since then, the cases have been subject to intense administrative efforts that have led to the settlement or voluntary dismissal of the vast majority of the cases. Approximately 3,500 of the original 54,000 cases remain active.

[7]     AO 12 is available at http://www.paed.uscourts.gov/documents/MDL/MDL875/adord12.pdf.

Section (B)(4) of AO 25 is entitled, "Defense Motions as to Choice of Law and Compensability of Claims." Under this section, Defendants could argue by way of motions to dismiss that the asbestos-related injuries alleged by Plaintiffs are non-cognizable as a matter of law. Defendants were instructed to, in any motions to dismiss, address the law that applies to each Plaintiff's claim against each Defendant, in addition to discussing the law that applies to cognizable injuries.[8]

---

[8]    The history of how this section of AO 25 came to be provides helpful background information. Judge Robreno signed Amended Administrative Order No. 12 on September 3, 2009. It requires certain submissions by plaintiffs in MDL 875. Although it specifically does not apply to MARDOC cases, see Amended Admin. Order No. 12 at § 8, No. 01-875 (E.D. Pa. Sept. 3, 2009), ECF No. 6645 [hereinafter "AO 12"], AO 12 has played an important part in streamlining the litigation of land-based asbestos cases in the MDL Court. In addition to requiring plaintiffs to submit information including lists of remaining viable defendants, the status of the case, and any related court actions, AO 12 requires the submission of "the medical diagnosing report or opinion upon which the plaintiff now relies for the prosecution of the claims as if to withstand a dispositive motion." The report or opinion submitted pursuant to AO 12 must "be based upon objective and subjective data which shall be identified and descriptively set out within the report or opinion." AO 12 § 4. Similar requirements have been increasingly used in multi-party, multi-jurisdictional mass tort cases. See, e.g., In re Silica Prods. Liab. Litig., 398 F. Supp. 2d 563, 575 & n.18 (S.D. Tex. 2005) (citing Order No. 4, which required each plaintiff to create a specific Fact Sheet); Lore v. Lone Pine Corp., No. L-03306-85, 1986 WL 637507, 1986 N.J.Super. LEXIS 1626 (N.J. Sup. Ct. Nov. 18, 1986) (requiring plaintiffs in mass tort litigation to provide, inter alia, "[r]eports of treating physicians and medical or other experts, supporting each individual plaintiff's claim of injury and causation").

Defendants have done just that. These motions to dismiss are presently before the Court.[9]

There are two overarching issues before the Court. First, the Court must determine which law applies to the present maritime docket cases: maritime law or a given state's law (for example, Ohio law). For reasons discussed herein, the Court finds that maritime law, rather than a given state's law, applies to all of these cases.

Second, the Court must decide when, under maritime law (including the Jones Act), a seaman is deemed to be "injured" as

_____

[9]     In responding to AO 25, Defendants who filed motions to dismiss in these cases attached lists of cases to which their motions applied. The motions and case lists vary in the categories of cases that they contain. For example, Defendant Crane Co. filed its motion to dismiss in the cases of Plaintiffs who Crane Co. contends have asymptomatic, non-malignant conditions, which Crane Co. lists in its Exhibit A. See Mot. to Dismiss of Def. Crane Co. at Ex. A, No. 02-875 (E.D. Pa. Jan. 9, 2012), ECF No. 640. Crane Co. also filed its motion to dismiss in cases in which Plaintiffs have lung cancer that Crane Co. contends is related to smoking, which are listed in Crane Co.'s Exhibit E. See id. at Ex. E. Meanwhile, "Multiple Shipowner Defendants Represented by Thompson Hine LLP" filed two separate motions to dismiss: one for cases in which Plaintiffs have "non-malignancies" and "smoking lung cancers," see Mot. to Dismiss of Multiple Shipowner Defs. at Ex. 1, No. 02-875 (E.D. Pa. Jan. 9, 2012), ECF No. 637, and another for "asymptomatic pleural changes," see Mot. to Dismiss of Multiple Shipowner Defs. at Ex. 1, No. 02-875 (E.D. Pa. Jan. 9, 2012), ECF No. 638.

        Plaintiffs failed to respond directly to each motion to dismiss that had corresponding case lists. Rather, Plaintiffs filed one Response in Opposition to all of Defendant's motions to dismiss on the main MDL 875 docket (2:01-md-00875). No case lists were attached. See AO 25 § A(4) (listing procedures for parties to follow when filing an identical motion or pleading to numerous cases, and requiring case lists in chronological order).

a result of his alleged exposure to asbestos, such that he has a cognizable claim. The Court today decides that a seaman without physical impairments resulting from asbestos exposure, including one who manifests only pleural changes,[10] has not suffered an "injury" under maritime law, and therefore has no cognizable claim.

---

[10]     The Maryland Court of Appeals, the state's highest court, included a helpful description of pleural changes in one of its seminal opinions regarding the cognizability of such claims:

> Pleural plaques and pleural thickening result from the scarring of the pleura, the thin membrane that keeps the lungs contained and configured to the chest wall and diaphragm. When asbestos fibers are inhaled into the lungs, they may pierce through the smallest airways into the pleura. The fibers that reach the pleura cause a localized reaction which results in a deposit of scar tissue. When the scarring of the pleura is localized, it is known simply as a pleural plaque. When the scarring is widespread, it is referred to as pleural thickening.
>
> All of the medical experts agreed that pleural plaques and pleural thickening are an alteration of an otherwise healthy pleura. They also agreed that pleural scarring does not constitute any loss or detriment. Appellants' two medical experts often used the word "injury" to describe pleural scarring, yet they testified that pleural plaques and pleural thickening do not affect the human body, do not shorten life expectancy, do not cause complications or problems, do not cause pain and cannot be felt.

Owens-Illinois v. Armstrong, 591 A.2d 544, 560 (Md. Ct. Spec. App. 1991) aff'd in relevant part, rev'd in part sub nom. Owens-Illinois, Inc. v. Armstrong, 604 A.2d 47 (Md. 1992).

As set forth in Exhibits "A" and "B" to the accompanying Order, the Court will grant Defendants' motions to dismiss the claims of Plaintiffs who have suffered no physical impairments[11] -- including those who manifest only pleural changes. See Ex. "A." The Court will deny Defendants' motions to dismiss the claims of Plaintiffs who have asbestos-related malignant or symptomatic physical injuries, such as lung cancer. See Ex. "B." The Court has incorporated Defendants' case lists into Exhibits "A" and "B," as Plaintiffs failed to provide any case lists to the Court in connection with their opposition to Defendants' motions to dismiss. See supra n.9. To the extent that Plaintiffs believe that the cases of symptomatic Plaintiffs -- for example, Plaintiffs who suffer from physical impairments and do not have solely pleural changes -- are included in Exhibit "A," but should properly be included in Exhibit "B," Plaintiffs shall have thirty days following the date on which the order accompanying this opinion is entered in which to show cause why the medical records and evidence that they previously have submitted pursuant to AO 25 support reopening the cases of those specific Plaintiffs and classifying their injuries as symptomatic and related to asbestos

---

[11]   Plaintiffs who have been exposed to asbestos, but have suffered no physical impairments, are sometimes referred to as "exposure-only plaintiffs." See Carlough v. Amchem Prods., Inc., 834 F. Supp. 1437, 1447 (E.D. Pa. 1993).

exposure. Defendants shall then have fifteen days in which to contest or challenge such medical records and evidence.

## III. LEGAL STANDARD

### A. Motion to Dismiss

A party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering such a motion, the Court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." DeBenedictis v. Merrill Lynch & Co., Inc., 492 F.3d 209, 215 (3d Cir. 2007) (internal quotation marks omitted). To withstand a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. Although a plaintiff is entitled to all reasonable inferences from the facts alleged, a plaintiff's legal conclusions are not entitled to deference and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

The pleadings must contain sufficient factual allegations so as to state a facially plausible claim for relief. See, e.g., Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). In deciding a Rule 12(b)(6) motion, the Court is to limit its inquiry to the facts alleged in the complaint and its attachments, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon these documents. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

B.   Applicability of Maritime Law

Jones Act and un-seaworthiness cases fall within the district court's admiralty jurisdiction. See O'Donnell v. Great Lakes Dredge & Dock Co., 318 U.S. 36, 41 (1943) (finding that a seaman's Jones Act suit for injuries incurred during the course of his employment is within maritime jurisdiction); Thomas J. Schoenbaum, 1 Admiralty & Mar. Law § 5-1 (5th ed. 2011) ("With admiralty jurisdiction comes, in general, the applicability of

maritime law. This is true even for maritime cases brought under diversity jurisdiction.").

Whether maritime law is applicable is a threshold dispute that is a question of federal law, see U.S. Const. art. III, § 2; 28 U.S.C. § 1333(1) (2006), and is therefore governed by the law of the circuit in which this MDL court sits. See Various Plaintiffs v. Various Defendants ("Oil Field Cases"), 673 F. Supp. 2d 358, 362 (E.D. Pa. 2009)(Robreno, J.). This court has previously set forth guidance on this issue. See Conner v. Alfa Laval, Inc., 799 F. Supp. 2d 455 (E.D. Pa. 2011) (Robreno, J.).

For maritime law to apply, a plaintiff's exposure underlying a products liability claim must meet both a locality test and a connection test. Id. at 463-66 (discussing Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 534 (1995)). The locality test requires that the tort occur on navigable waters or, for injuries suffered on land, that the injury be caused by a vessel on navigable waters. Id. In assessing whether work was on "navigable waters" (that is, was sea-based), the Supreme Court has found that work performed aboard a ship that is docked at the shipyard is sea-based work, performed on navigable waters. See Sisson v. Ruby, 497 U.S. 358, 360 (1990). This Court has previously clarified that sea-based work includes work aboard a ship that is in "dry dock." See Deuber v. Asbestos Corp. Ltd., No. 10-78931, 2011 WL 6415339, at *1 n.1 (E.D. Pa. Dec. 2, 2011)

11

(Robreno, J.) (applying maritime law to ship in "dry dock" for overhaul). By contrast, work performed in other areas of the shipyard, or on a dock, is land-based work. The connection test requires that the incident could have "'a potentially disruptive impact on maritime commerce,'" and that "'the general character' of the 'activity giving rise to the incident' shows a 'substantial relationship to traditional maritime activity.'" Grubart, 513 U.S. at 534 (quoting Sisson, 497 U.S. at 364, 365, and n.2).

### 1. Locality Test

If a service member in the Navy performed some work at shipyards or on docks as opposed to onboard a ship on navigable waters, "the locality test is satisfied as long as some portion of the asbestos exposure occurred on a vessel on navigable waters." Conner, 799 F. Supp. 2d at 466; Deuber, 2011 WL 6415339, at *1 n.1. If, however, the worker never sustained asbestos exposure onboard a vessel on navigable waters, then the locality test is not met and state law applies.

### 2. Connection Test

When a worker whose claims meet the locality test was primarily sea-based during his asbestos exposure, his claims will almost always meet the connection test necessary for the

application of maritime law. <u>Conner</u>, 799 F. Supp. 2d at 467-69 (citing <u>Grubart</u>, 513 U.S. at 534). This is particularly true in cases in which the exposure occurred as a result of the claimant's working aboard Navy vessels. <u>See</u> <u>id.</u> But if the worker's exposure was primarily land-based, then, even if the claims could meet the locality test, they do not meet the connection test and state law (rather than maritime law) applies. <u>Id.</u>

C.   <u>Applicability of Federal Procedural Law</u>

Federal courts have "original jurisdiction, exclusive of the courts of the States," over "[a]ny civil case of admiralty or maritime jurisdiction[.]" 28 U.S.C. § 1333(1) (2006). And, in matters requiring the interpretation of the Constitution, a federal law, or a federal rule of procedure, a transferee court applies the law of the circuit where it sits. Therefore, in cases where jurisdiction is based on federal question -- including maritime law -- this Court, as the transferee court, will apply federal law as interpreted by the Third Circuit. <u>Oil Field Cases</u>, 673 F. Supp. 2d at 362-63.

This Court has noted that "the applicability of maritime jurisdiction results in federal maritime law displacing state

law." <u>Conner</u>, 799 F. Supp. 2d at 460.[12] Although maritime law is "an amalgam" of various rules, the Third Circuit has directed that for cases that sound in maritime law, a federal district court "need not look to the general choice of law rules articulated in <u>Erie</u>." <u>Gibbs v. Carnival Cruise Lines</u>, 314 F.3d 125, 129 (3d Cir. 2002) (citing <u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64, 64 (1938)). In fact, "if the case sounds in admiralty, it would be <u>inappropriate</u> to apply . . . [any] state's law, instead of federal admiralty law." <u>Id.</u> at 131 (emphasis added). This rule applies regardless of whether the district court's jurisdiction was originally based upon diversity or upon admiralty jurisdiction. <u>Id.</u> at 132.

In <u>Gibbs</u>, the Court of Appeals for the Third Circuit addressed the issue of whether federal law or state law applied to determine the procedures for establishing a guardian ad litem for a minor who was injured on a cruise ship on navigable waters. <u>Id.</u> at 128. The minor's domicile was in New Jersey, and the district court had jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332. However, because the minor was injured aboard the cruise ship at sea, the Court of Appeals concluded

---

[12]     However, maritime law does not necessarily differ from state law in every case. In fact, in some respects, maritime law incorporates state law. <u>See</u> <u>E. River S.S. Corp. v. Transamerica Delaval, Inc.</u>, 476 U.S. 858, 864-65 (1986) ("Drawn from state and federal sources, the general maritime law is an amalgam of traditional common-law rules, modifications of those rules, and newly created rules." (internal footnote omitted)).

that "this case sounds in admiralty," and that therefore, "we apply federal admiralty law and not the law of New Jersey or any other state." Id. at 132 (emphasis added). Thus, the Court of Appeals found that the Federal Rules of Civil Procedure, and not the New Jersey Court Rule pertaining to the appointment of guardians ad litem, applied. Id. at 129. That the district court took the case "under diversity jurisdiction, rather than admiralty jurisdiction under 28 U.S.C. § 1333," did not affect the Court of Appeals' determination. Id. at 132.

## IV.   DISCUSSION

Supreme Court jurisprudence teaches that maritime law is "[d]rawn from state and federal [authorities]," and accordingly, "the general maritime law is an amalgam of traditional common-law rules, modifications of those rules, and newly created rules." E. River S.S. Corp., 476 U.S. at 864-65 (internal footnote omitted). With this command in mind, the Court will canvass authorities applying the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51-60 (2006), state court decisions, and notions of sound public policy, see id., to arrive at an appropriate rule of decision.

15

A.    Non-Cognizability of Asymptomatic Conditions

1.    Connections Between the Jones Act, Maritime Law and FELA

FELA is a federal statute that "holds railroads liable for employees' injuries 'resulting in whole or in part from [carrier] negligence.'" CSX Transp., Inc. v. McBride, 131 S. Ct. 2630, 2632 (2011) (citing 45 U.S.C. § 51). FELA and the Jones Act are closely related, as both statutes allow employees -- railroad employees or seamen, respectively -- to sue their employers for damages if they are injured "while acting within the course of their employment[,]" and if their employers have been negligent. John A. Bourdeau & Theresa L. Kruk, Annotation, Recovery for negligent or intentional infliction of emotional distress under Jones Act (46 U.S.C.A. Appx. § 688) or under Federal Employers' Liability Act (45 U.S.C.A. §§ 51 et seq.), 123 A.L.R. Fed. 583 (1995). Therefore, cases decided under FELA provide a helpful starting point for analyzing Jones Act and maritime law cases, in that the Jones Act incorporates the jurisprudence developed under FELA, and, in turn, maritime law incorporates the teachings of the Jones Act.

The interconnectedness between FELA and the Jones Act has been noted by the Supreme Court, which held that "the Jones Act adopts 'the entire judicially developed doctrine of liability' under the Federal Employers' Liability Act (FELA)." See, e.g., Am. Dredging Co. v. Miller, 510 U.S. 443, 456 (U.S. 1994)

16

(quoting <u>Kernan v. Am. Dredging Co.</u>, 355 U.S. 426, 439 (1958))
(applying the Jones Act and noting that the Jones Act and FELA
each has a "uniformity requirement" that requires state courts to
apply a uniform federal law).

Additionally, the Supreme Court has noted that "the
principles governing" FELA cases "clearly should apply" to Jones
Act cases. <u>Kernan</u>, 355 U.S. 426, 439 (1958). Like maritime law
jurisprudence, "FELA jurisprudence gleans guidance from
common-law developments[.]" <u>Consol. Rail Corp. v. Gottshall</u>, 512
U.S. 532, 541 (1994) (citing <u>Atchison, Topeka & Santa Fe Ry. Co.
v. Buell</u>, 480 U.S. 557, 568 (1987)). This is because, in
developing both the Jones Act and FELA, "instead of a detailed
statute codifying common-law principles, Congress saw fit to
enact a statute of the most general terms, thus leaving in large
measure to the courts the duty of fashioning remedies for injured
employees in a manner analogous to the development of tort
remedies at common law." <u>Kernan</u>, 355 U.S. at 432. Congress
intended neither the Jones Act nor FELA to be a "static remedy,
but one which would be developed and enlarged to meet changing
conditions and changing concepts of industry's duty toward its
workers." <u>Id.</u>

As for the relationship between the Jones Act and general
maritime law, the Jones Act "does not disturb seamen's general
maritime claims for injuries resulting from unseaworthiness . . .

17

. Rather, the Jones Act establishes a uniform system of seamen's tort law parallel to that available to employees of interstate railway carriers under FELA." <u>Miles v. Apex Marine Corp.</u>, 498 U.S. 19, 29 (1990) (citing <u>Pacific S. S. Co. v. Peterson</u>, 278 U.S. 130, 139 (1928)).[13]


    2.   <u>Requirement of an "Injury" under the Jones Act, Maritime Law, and FELA</u>

Under the Jones Act, a "seaman injured in the course of employment . . . may elect to bring a civil action . . . against the employer." 46 U.S.C. § 30104 (2006). Further, laws "regulating recovery for personal injury to . . . a railway employee apply to an action under this section." <u>Id.</u> The plain language of the statute requires "personal injury" to maintain a claim for damages.

When matters of maritime law are not covered by a statute such as the Jones Act, "the general maritime law," also known as maritime common law, applies. Thomas J. Schoenbaum, 1 Admiralty & Mar. Law § 5-1 (5th ed. 2011). Common law traditionally has not

---

[13]    There are important differences between general maritime law and the Jones Act, in certain respects. <u>See, e.g.</u>, <u>Ferrara v. A. & V. Fishing, Inc.</u>, 99 F.3d 449, 452-53 (1st Cir. 1996) (noting that a Jones Act claim requires a showing of negligence, while a general maritime un-seaworthiness claim requires no showing of fault). However, for purposes of the legal questions before the Court (for example, what constitutes an "injury"), it is not necessary to analyze the Jones Act separately from general maritime law. The text of the Jones Act requires an injury, as does maritime common law.

compensated "purely economic harms" absent personal injury, except in certain circumstances such as "natural-resource damage." Exxon Shipping Co. v. Baker, 554 U.S. 471, 508 (2008) (citing Robins Dry Dock & Repair Co. v. Dahl, 266 U.S. 449 (1925); K. Abraham, Forms and Functions of Tort Law 247–48 (3d ed. 2007)). The rule that claims of economic harms only, without personal injury, are non-cognizable applies in the maritime context. Id.

In Schweitzer v. Consolidated Rail Corp., the Third Circuit, applying FELA law, found that "subclinical injury resulting from exposure to asbestos is insufficient to constitute the actual loss or damage to a plaintiff's interest required to sustain a cause of action under generally applicable principles of tort law." 758 F.2d 936, 942 (3d Cir. 1985). The Court noted that it would be "undesirable" to have a rule that would allow exposure-only plaintiffs without actual loss or damage to proceed with their claims "in the asbestos-related tort context." Id. at 942.

Although Schweitzer involved claims under FELA,[14] the Third

---

[14]    The specific issue involved in the case was whether the plaintiffs, who alleged exposure to asbestos prior to their employer's bankruptcy filing and reorganization, but did not manifest any injury until after the reorganization, had "claims" against the employer that were discharged in the bankruptcy proceedings. Id. at 941. The Court found that such plaintiffs did not have (indeed, could not have had) claims that were discharged in the bankruptcy proceedings, because they suffered no physical manifestations of asbestos exposure prior to the bankruptcy proceedings. Their actual exposure to asbestos did not constitute an injury that would have allowed them to assert a claim against

Circuit's rationale and policy considerations are equally applicable to the instant cases:

> If mere exposure to asbestos were sufficient to give rise to a F.E.L.A. cause of action, countless seemingly healthy railroad workers, workers who might never manifest injury, would have tort claims cognizable in federal court. It is obvious that proof of damages in such cases would be highly speculative, likely resulting in windfalls for those who never take ill and insufficient compensation for those who do. Requiring manifest injury as a necessary element of an asbestos-related tort action avoids these problems and best serves the underlying purpose of tort law: the compensation of victims who have suffered. Therefore we hold that, as a matter of federal law, F.E.L.A. actions for asbestos-related injury do not exist before manifestation of injury.

Id.  Schweitzer cited favorably to Urie v. Thompson, 337 U.S. 163 (1949), which held that a FELA action for personal injury resulting from the inhalation of silica dust does not accrue until a "silica-related injury manifests itself." 758 F.2d at 941 (citing Urie, 337 U.S. at 170). Specifically, in Urie, the Supreme Court had found that, for statute-of-limitations purposes, an employee "'can be held to be "injured" only when the accumulated effects of the deleterious substance manifest themselves.'" Urie, 337 U.S. at 170 (quoting Associated Indem. Corp. v. Indus. Accident Comm'n, 12 P.2d 1075, 1076 (Cal. Ct. App. 1932)). The Court did not elaborate on what "manifest themselves" meant, but it found that the statute of limitations

---

the employer.

for the plaintiff's claim began to run approximately when he was diagnosed with silicosis in the weeks following his becoming too ill to work. Id. Therefore, the logical inference from the Court's statement is that the plaintiff was "injured" when the effects of his earlier silica exposure "manifested themselves" by making him so ill that he could not work. Put another way, the plaintiff was not yet "injured" prior to the time that he became physically ill.

In Zulkowski v. Consolidated Rail Corp., 852 F.2d 73 (3d Cir. 1988), the Third Circuit revisited its holding in Schweitzer, solidifying the rule that plaintiffs who suffer no actual loss or damage from asbestos exposure cannot maintain their claims. In Zulkowski, also a FELA case, the Court noted that "a subclinical injury from asbestos exposure is an insufficient basis on which to maintain a tort action[,] as a party does not suffer an actual loss or damage from such an injury." Id. at 76. It follows that "manifest injury is a prerequisite for an FELA action for an asbestos-related injury." Id. (finding railroad-employer liable to former employee under FELA, the Bankruptcy Act, and the Rail Act, when plaintiff developed asbestosis after his retirement and after employer had reorganized under the bankruptcy code; reorganized entity had not been relieved of liabilities of prior entity).

3.   <u>The Trend Among the States</u>

Examining the general trend among the states is also helpful in determining whether physical injury is a prerequisite to liability for asbestos exposure under maritime law.

Recently, this Court predicted that the Supreme Court of Illinois would not find asymptomatic asbestos-related exposures -- including asymptomatic pleural changes -- to be cognizable under Illinois law. <u>In re Asbestos Products Liab. Litig. (No. VI)</u>, 278 F.R.D. 126, 134-35 (E.D. Pa. 2011) (Robreno, J.).

The Court noted that "[t]he emerging trend in asbestos litigation around the country is not helpful to Plaintiffs. All signs in this mature litigation point to the treatment of pleural plaques and pleural thickening as non-cognizable, unless and until plaintiffs exhibit physical impairments or malignancies." <u>Id.</u> (citing <u>In re Hawaii Federal Asbestos Cases</u>, 734 F. Supp. 1563, 1567 (D. Hawaii 1990) (holding that "the mere presence of asbestos fibers, pleural thickening or pleural plaques in the lung unaccompanied by an objectively verifiable functional impairment" is not cognizable); <u>AlliedSignal, Inc. v. Ott</u>, 785 N.E.2d 1068, 1075 (Ind. 2003) (holding that, under Indiana law, claims of asymptomatic pleural plaques and pleural thickening are not actionable); <u>Armstrong</u>, 591 A.2d at 560-61 (Md. Ct. Spec. App. 1991), <u>aff'd in part, rev'd in part on other grounds</u>, 604 A.2d 47 (Md. 1992) (holding that pleural plaques and pleural

22

thickening do not cause detriment and are not legally compensable injuries); Simmons v. Pacor, Inc., 674 A.2d 232, 237 (Pa. 1996) (holding that "asymptomatic pleural thickening is not a compensable injury"); Giffear v. Johns-Manville Corp., 632 A.2d 880, 884 (Pa. Super. 1993) (holding that, under Pennsylvania law, "pleural thickening, absent disabling consequences or manifest physical symptoms, is a non-compensable injury and is therefore not a cognizable claim")).

Other state courts also have recognized that asymptomatic asbestos-related conditions are not actionable under their respective jurisprudence. See, e.g., Burns v. Jaquays Min. Corp., 752 P.2d 28, 30-31 (Ariz. Ct. App. 1987) (quoting Schweitzer, 758 F.2d at 942) ("subclinical injury resulting from exposure to asbestos is insufficient to constitute the actual loss or damage to a plaintiff's interest required to sustain a cause of action"); Bowerman v. United Illuminating, No. X04CV 940115436S, 1998 WL 910271, at *5 (Conn. Super. Ct. Dec. 15, 1998) (finding that asymptomatic pleural changes were not actionable when plaintiffs presented no evidence of physical symptoms); Bernier v. Raymark Indus., Inc., 516 A.2d 534, 543 (Me. 1986), (subclinical injury is not an actionable injury under tort law "even assuming that any inhalation of asbestos dust immediately causes microscopic injury to lung tissues"); Ford Motor Co. v. Miller, 260 S.W.3d 515, 517 (Tex. App. 2008) (applying Michigan

law and reversing plaintiff's jury award when plaintiff had only asymptomatic pleural changes, as "Michigan law is clear that negligence recovery must be based on a present injury, not the fear of a speculative future injury"); Ackison v. Anchor Packing Co., 897 N.E.2d 1118, 1126 (Ohio 2008) ("This court has never held that asymptomatic pleural thickening is, by itself, sufficient to establish a compensable injury for asbestos exposure."); Solberg v. Tice Elec., 157 P.3d 1277, 1278 (Or. Ct. App. 2007) (claimant with asymptomatic pleural plaques "does not currently suffer from a disease" under Oregon workers' compensation law, as pleural plaques require no medical treatment and do not impair vital functions).

Finally, the Court notes that Plaintiffs have not brought to the Court's attention any cases where a plaintiff claiming asbestos exposure who was asymptomatic and unimpaired could maintain a claim under state law.

### 4.   Public Policy Considerations

Allowing an asymptomatic plaintiff, such as one with only pleural changes, to collect damages, especially in a litigation as long-running as asbestos litigation, would be contrary to public policy. See generally Francis E. McGovern, The Tragedy of the Asbestos Commons, 88 Va. L. Rev. 1721, 1744-49 (2002) (discussing disparate settlement and jury verdict amounts that

certain plaintiffs with various diseases have received, and the
limited funds available in asbestos litigation given that many
defendants have filed for bankruptcy or ceased to exist); Francis
E. McGovern, Resolving Mature Mass Tort Litigation, 69 B.U. L.
Rev. 659, 660 (1989) (stating that "fairness--values of
predictability, rationality, and equality of opportunity and
strategy" are at issue in mass tort litigation).

As noted by the Third Circuit in the context of FELA case
law, to find otherwise would constitute a windfall to those
plaintiffs who did not later develop an asbestos-related disease,
while at the same time potentially diluting funds for the
plaintiffs who are seriously injured at present. See, e.g.,
Schweitzer, 758 F.2d at 942.


     B.   Alternative Vehicles Suggested by Defendants to Dispose
        of the Claims

        1.   Ohio Asbestos Litigation Reform Act

Defendants argue that, because most of the instant cases
were filed originally in the Northern District of Ohio, this
Court should apply the Ohio Asbestos Litigation Reform Act ("the
Act"), Ohio Rev. Code Ann. §§ 2307.91-2307.93 (West 2004), to the
instant cases. Under Ohio law, according to Defendants, these
cases -- including both lung cancer claims and asymptomatic
condition claims -- would be dismissed because Plaintiffs have
failed to comply with the procedural requirements set forth in

the Act.

Defendants argue that, even if maritime substantive law (rather than Ohio law) applies to this case, it is within the Court's discretion to adopt state procedural rules such as the Ohio law. This, Defendants argue, would help to streamline the litigation, conserve resources, and further all other goals announced by the Ohio legislature in enacting that legislation.[15]

As the MARDOC cases sound in maritime law, maritime law applies, and thus, neither state substantive nor procedural laws are relevant to these cases.[16] In cases where jurisdiction is

---

[15] Defendants argue that cases in the following categories must be dismissed for failure to comply with the Ohio procedural law: (1) "non-malignant" cases, and (2) cases in which Plaintiffs have "asymptomatic pleural changes." Certain Defendants (though not all), especially those who encouraged the Court to adopt Ohio's procedural rules, further argue that "smoking lung cancer" cases should be dismissed. The basis for this argument is that the relevant Ohio statute establishes strict bars to bringing asbestos claims even when a plaintiff has lung cancer potentially related to smoking in addition to asbestos exposure. See Ohio Rev. Code Ann. § 2307.923 (West 2004).

Counsel for Defendants stated on the record during oral argument that they did not file motions to dismiss based upon non-cognizability of claims in cases in which Plaintiffs claim to be suffering from mesothelioma. See Tr. at 10:22-11:17, 12:16-12:21, No. 02-875 (E.D. Pa. April 26, 2012), ECF No. 1184.

[16] It is true that, in cases where maritime law applies but the body of maritime law is not developed on the issue, the federal court applying maritime law may "borrow" state law to fill in the gap. See Marastro Compania Naviera, S.A. v. Canadian Mar. Carriers, Ltd., 959 F.2d 49, 53 (5th Cir. 1992) (explaining that "federal courts may borrow from a variety of sources in establishing common law admiralty rules to govern maritime liability where deemed appropriate[,]" but that "in the absence of federal cases or an established federal admiralty rule . . .,

26

based on federal question -- including cases sounding in maritime law -- this Court, as the transferee court, will apply federal substantive and procedural law as interpreted by the Third Circuit. Oil Field Cases, 673 F. Supp. 2d at 362-63. It matters not whether jurisdiction over these cases originally was based on diversity of citizenship, or on federal question. Gibbs, 314 F.3d at 132.

The Ohio Asbestos Litigation Reform Act is completely inapplicable in the MARDOC cases, where the Court must apply maritime substantive law and federal procedural law. Therefore,

---

it would be more appropriate to apply general common law rather than state law which would impair the uniformity . . . of the federal admiralty law") (citations and internal quotation marks omitted); Floyd v. Lykes Bros. Steamship Co., 844 F.2d 1044, 1047-49 (3d Cir. 1988) (borrowing state law concepts in holding that ship's captain had discretion to dispose of the dead body of a seaman at sea, when maritime law was silent on the issue); Conner v. Aerovox, Inc., 730 F.2d 835, 842 (1st Cir. 1984) ("There is no question that federal courts may borrow from a variety of sources[,]" including state law, "in establishing common law admiralty rules to govern maritime law liability where deemed appropriate." (citation omitted)); Latin Amer. Prop. & Cas. Ins. Co. v. Hi-Lift Marina, Inc., 677 F. Supp. 1156, 1159-60 (S.D. Fla. 1988) (applying state bailment principles in holding that a marina had not breached its duty of care), vacated on other grounds, 887 F.2d 1477 (11th Cir. 1989); Thomas J. Schoenbaum, 1 Admiralty & Mar. Law § 4-1 (5th ed. 2011) ("When new situations arise that are not directly governed by legislation or admiralty precedent," federal courts "may, and often do, look to state statutory law and to precepts of the common law which they 'borrow' and apply as the federal admiralty rule." (footnotes omitted)).

In this case, however, given the need for a uniform rule of decision and the clear markers as to what that rule should be, the Court opts for developing maritime law on the issue rather than "borrowing" Ohio law.

the Court declines to rely on the Ohio statute in ruling on Defendants' motions to dismiss.

### 2.   Administrative Order No. 8

Certain Defendants argue that the MDL 875 Court should reinstate Administrative Oder No. 8 ("AO 8")[17] for purposes of "administratively dismissing" MARDOC cases in which Plaintiffs exhibit no asbestos-related physical symptoms and tolling the relevant statutes of limitations.

The-presiding Senior Judge Charles R. Weiner entered Administrative Order No. 8 on January 14, 2002. The objective of AO 8 was to give priority to plaintiffs with serious medical conditions, as opposed to plaintiffs who had no symptoms but who nevertheless filed suit due to a fear of developing symptoms in the future. As Judge Weiner noted, massive filings of new cases were clogging the docket and taking time and money away from the most seriously ill and most deserving plaintiffs.

The Order administratively dismissed "non-malignant, asbestos related, personal injury cases . . . which were initiated through a mass screening[.]" However, administratively dismissed cases were technically kept on an active docket, and plaintiffs could move to reinstate such cases. Administrative

---

[17]   AO 8 (which has been vacated) is available at: http://www.paed.uscourts.gov/documents/MDL/MDL875/adord8.pdf

Order No. 8 noted that certain MARDOC cases were previously
dismissed without prejudice and their statutes of limitations
were tolled while the cases remained in a "special active status
category."

Now-presiding Judge Eduardo C. Robreno vacated
Administrative Order No. 8 on July 17, 2009 when he signed
Administrative Order No. 19 ("AO 19").[18] AO 19 noted that "the
problem of massive filings of new cases which would clog the
docket, taking time and money away from the most seriously ill or
most deserving plaintiffs" no longer existed in MDL 875. The
circumstances "justifying the entry of [AO 8]" had changed, and
"the efficient administration of MDL 875" was no longer served by
AO 8. AO 19 therefore ordered that all cases would be returned to
the active docket and reinstated.[19]

As all MARDOC cases are currently on the active docket, and
as none of the conditions that justified the implementation of AO
8 exist today, the Court will not reinstate AO 8, but rather will
continue to administer the MARDOC cases by adhering to its policy

---

[18]    AO 19 is available at:
http://www.paed.uscourts.gov/documents/MDL/MDL875/adord19.pdf

[19]    When all cases had been returned to the active docket
and reinstated, Judge Robreno signed Administrative Order No. 24,
available at
http://www.paed.uscourts.gov/documents/MDL/MDL875/Admin.%20Order%
2024.pdf, which vacated, inter alia, AO 19. At that point, all
cases had been returned to the active docket and reinstated, a
process that mooted AO 19.

of one plaintiff, one case. AO 25 has been successful in moving the litigation along, and should the need arise for another MARDOC-specific administrative order, then the Court will proceed accordingly.

C.   Applying Maritime Law to the Instant Claims

As it is undisputed that the MARDOC Plaintiffs sustained their alleged asbestos exposure while they were merchant marines who performed tasks in connection with the operation and maintenance of vessels while aboard vessels on navigable waters,[20] the locality and connection tests are satisfied in these cases, and the Court shall apply maritime law -- including the Jones Act -- to Plaintiffs' claims against Defendants.

The Court finds that under maritime law, including the Jones Act, a seaman is not "injured" if he does not suffer physical impairment resulting from asbestos exposure. Plaintiffs who have only pleural changes are not "injured." The Court excludes from the "non-injured" category cancer claims, including claims

---

[20]   Indeed, Plaintiffs' brief notes that "[t]he injured parties in this litigation group were all merchant marines who sustained asbestos-related injuries during the course of their employment aboard vessels on navigable waters." Pls.' Resp. in Opp'n at 3, No. 02-875 (E.D. Pa. Feb. 8, 2012), ECF No. 729. Plaintiffs further note that, "based on any argument to the contrary by the Various Defendants and the overwhelming facts in support of this determination, it is clear that maritime law applies to the claims on this docket." Id. at 3-4. Therefore, there are no claims asserted under Ohio law.

related to "smoking lung cancers," and claims of Plaintiffs who manifest physical injury related to their alleged asbestos exposure. <u>See</u> Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 4 (2010) ("'Physical harm' means the <u>physical impairment</u> of the human body ('bodily harm') . . . . Bodily harm includes physical injury, illness, disease, impairment of bodily function, and death.") (emphasis added). Plaintiffs who are not injured cannot maintain claims against Defendants.

Plaintiffs' argument that an "injury" occurs as soon as one inhales asbestos dust is unconvincing. <u>See</u> Tr. at 56:24-57:12, No. 02-875 (E.D. Pa. April 26, 2012), ECF No. 1184. Although some asbestos-related insurance cases support that position, such case law focuses upon the interpretation of insurance policies themselves, rather than on maritime law or the Jones Act in particular.[21] Thus, Plaintiffs' argument fails.


## IV.   CONCLUSION

For the reasons set forth above, Defendants' 3,327 motions to dismiss the claims of Plaintiffs without physical impairment related to asbestos exposure will be **GRANTED**. This will result in

---

[21]   For example, the Court of Appeals for the Third Circuit has found that "exposure, exposure-in-residence, and manifestation all constitute 'bodily injury' within the meaning of the policies." <u>AC&S, Inc. v. Aetna Cas. & Sur. Co.</u>, 764 F.2d 968, 973 (3d Cir. 1985).

the dismissal of 1,679 cases. Defendants' 2,137 motions based on Plaintiffs' claims of symptomatic injuries, including lung and other cancers, will be **DENIED**. To the extent that Plaintiffs believe that the cases of symptomatic Plaintiffs are included in Exhibit "A," but should properly be included in Exhibit "B," Plaintiffs shall have thirty days following the date on which the order accompanying this opinion is entered in which to show cause why the medical records and evidence that they previously have submitted pursuant to AO 25 support reopening the cases of those specific Plaintiffs and classifying their injuries as symptomatic and related to asbestos exposure. Defendants shall then have fifteen days in which to contest or challenge such medical records and evidence. An appropriate order follows.