**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

IN RE: ASBESTOS PRODUCTS     :    CONSOLIDATED UNDER
LIABILITY LITIGATION (No. VI) :    MDL DOCKET NO. 875
                           :
COWART, ET AL.            :
                           :    Certain cases on the
v.                     :    02-md-875 Maritime Docket
                           :    (MARDOC), listed on the
VARIOUS DEFENDANTS       :    attached "Exhibit A"

M E M O R A N D U M

EDUARDO C. ROBRENO, J.            October 23, 2014

## I.    INTRODUCTION

Before the Court are thirty-two[1] motions to dismiss due to
lack of personal jurisdiction in cases originally filed in the
District Court for the Virgin Islands. The cases were later
transferred to the District Court for the Eastern District of
Pennsylvania and consolidated as part of the maritime
multidistrict asbestos litigation ("MARDOC").[2] The plaintiffs in

---

[1] Some of the motions are duplicative.

[2] As of September 30, 2014, 186,594 cases have been transferred
to MDL 875. See MDL 875 Statistics, U.S. District Ct. E.
District of Pa., http://www.paed.uscourts.gov/mdl875t.asp (last
visited October 20, 2014). For substantive, procedural, and
administrative reasons, the cases in MDL 875 have proceeded on
two separate dockets, one of which is the MARDOC. At its
largest, the MARDOC totaled 63,371 cases. Id. Currently, there
are approximately 2,668 MARDOC cases pending. Id. For an
overview of the history of the MARDOC, see Bartel v. Various
Defendants, 965 F. Supp. 2d 612 (E.D. Pa. Aug. 26, 2013)
(Robreno, J.). See also, generally, Hon. Eduardo C. Robreno, The
Federal Asbestos Product Liability Multidistrict Litigation

these cases are various merchant marines and their representatives, survivors, and spouses.  The eighteen affected defendants assert that the Court may not exercise personal jurisdiction over them as they lack sufficient contacts with the Virgin Islands.  In their responses, and in addition to several novel arguments the Court has previously rejected, the plaintiffs allege that the Court has general jurisdiction over the defendants.  They do not assert that the Court may exercise specific jurisdiction - either through the Due Process Clause of the Constitution or through the Virgin Islands long-arm statute - as there are no cases in which the plaintiffs' damages arise from the defendants' contacts in the forum.

There are essentially three types of defendants that filed motions:  (1) those with no contacts in the Virgin Islands; (2) those that have no contacts themselves, but who are related to other entities with contacts; and (3) those that have some level of forum contacts.  For the reasons that follow, the Court finds that the Court lacks personal jurisdiction over all of the moving defendants. Therefore, the thirty-two motions will be granted.

---

(MDL-875): Black Hole or New Paradigm?, 23 Widener L. J. 97 (2013).

## II.  LEGAL STANDARDS

### A.  Motion to Dismiss Based on Lack of Personal Jurisdiction Under Federal Rule of Civil Procedure 12(b)(2)

In considering a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, "[t]here are specific analytical steps [the Court] must take in determining whether personal jurisdiction can be asserted over a nonresident defendant," and "Rule 4(e) of the Federal Rules of Civil Procedure is the starting point." Pennzoil Prods. Co. v. Colelli & Assoc., Inc., 149 F.3d 197, 200 (3d Cir. 1998) (citing Mellon Bank (East) PSFS, Nat. Ass'n v. Farino, 960 F.2d 1217, 1221 (3d Cir. 1992)). Rule 4(e) allows for personal jurisdiction over non-resident defendants to the extent authorized under the law of the state in which the district court sits.  In the MDL setting, the transferee court applies the personal jurisdiction law of the state where the case was filed.  See Marshall Investments Corp. v. Krones A.G., 572 F. App'x 149, 152, n.4 (3d Cir. 2014) (providing that "[w]hen a case is transferred under 28 U.S.C. § 1407 for consolidated pretrial proceedings, the transferee court must 'apply the same state substantive law . . . that would have been applied by a state court in the jurisdiction in which a case was filed.'") (quoting Menowitz v. Brown, 991 F.2d 36, 40 (2d Cir. 1993)).  Thus, in the present cases, the proper forum

law is that of the U.S. Virgin Islands, where the cases were
initially brought.

In deciding a motion to dismiss, the Court "must accept all
of the plaintiff's allegations as true and construe disputed
facts in favor of the plaintiff." Pinker v. Roche Holdings
Ltd., 292 F.3d 361, 368 (3d Cir. 2002) (internal quotation marks
and citations omitted). However, since the defendants have
objected to personal jurisdiction, the plaintiffs bear the
burden of proof in establishing it. Id.; see also Francis v.
Bridgestone Corp., CV 2010-030, 2013 WL 5276365, at *2 (D.V.I.
Sept. 18, 2013) (citing D'Jamoos ex rel. Weingeroff v. Pilatus
Aircraft Ltd., 566 F.3d 94, 102 (3d Cir. 2009)).

**B.    Personal Jurisdiction**

"The Due Process Clause of the Fourteenth Amendment sets
the outer boundaries of a state tribunal's authority to proceed
against a defendant." Goodyear Dunlop Tires Operations, S.A. v.
Brown, 564 U.S. ---, 131 S. Ct. 2846, 2853 (2011) (citing
Shaffer v. Heitner, 433 U.S. 186, 207 (1977)). Courts recognize
two forms of personal jurisdiction: general and specific. As
recently summarized by the Supreme Court:

> [a] court may assert general jurisdiction over foreign
> (sister-state or foreign-country) corporations to hear
> any and all claims against them when their
> affiliations with the State are so "continuous and
> systematic" as to render them essentially at home in
> the forum State. See International Shoe, 326 U.S., at
> 317, 66 S.Ct. 154. Specific jurisdiction, on the

> other hand, depends on an "affiliatio[n] between the
> forum and the underlying controversy," principally,
> activity or an occurrence that takes place in the
> forum State and is therefore subject to the State's
> regulation.  von Mehren & Trautman, <u>Jurisdiction to
> Adjudicate: A Suggested Analysis</u>, 79 Harv. L. Rev.
> 1121, 1136 (1966) (hereinafter von Mehren & Trautman);
> <u>see</u> Brilmayer et al., <u>A General Look at General
> Jurisdiction</u>, 66 Texas L. Rev. 721, 782 (1988)
> (hereinafter Brilmayer).  In contrast to general, all-
> purpose jurisdiction, specific jurisdiction is
> confined to adjudication of "issues deriving from, or
> connected with, the very controversy that establishes
> jurisdiction."  von Mehren & Trautman 1136.

<u>Id.</u> at 2851.  Thus, a court may assert specific jurisdiction
over a party in an action arising from its forum contacts, or
general jurisdiction when the action is based solely on the
quantity and quality of the party's forum contacts rather than
on their relationship to the action.

### 1.  Specific Jurisdiction

In this case, the plaintiffs do not allege that their
injuries occurred in the Virgin Islands or arose from the
defendants' contacts there.  Thus, the plaintiffs do not, and
cannot, assert that the Court has specific jurisdiction over the
defendants either through the Due Process Clause or the Virgin
Islands long-arm statute, 5 V.I.C. § 4903.  <u>See</u> <u>J. McIntyre
Mach., Ltd. v. Nicastro</u>, --- U.S. ---, 131 S. Ct. 2780, 2788
(2011) (holding that "submission [to jurisdiction] through
contact with and [<u>sic</u>] activity directed at a sovereign may
justify specific jurisdiction 'in a suit arising out of or

5

related to the defendant's contacts with the forum.'") (quoting
Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408,
414, n.8 (1984)); Urgent v. Technical Assistance Bureau, Inc.,
255 F. Supp. 2d 532, 535-36 (D.V.I. 2003) (providing that the
Virgin Islands long-arm statute "is coextensive with the maximum
perimeters of the due process clause").  Therefore, this Court
need only address whether it has general jurisdiction over the
defendants.

### 2.   General Jurisdiction

As described above, general jurisdiction is premised on a
defendant's forum contacts that are unrelated to the plaintiff's
injury.  In recent years, the Supreme Court has substantially
curtailed the application of general jurisdiction over corporate
defendants.  Daimler AG v. Bauman, 571 U.S. ---, 134 S. Ct. 746,
758 (2014) (recognizing that "general jurisdiction has come to
occupy a less dominant place in the contemporary scheme").  The
Court in Daimler asserted that "only a limited set of
affiliations with a forum will render a defendant amenable to"
general jurisdiction.  Id. at 760.  Specifically, general
jurisdiction will only lie where a corporation "is fairly
regarded as at home" which typically will mean its "place of
incorporation and principal place of business" as these are
"paradigm bases for general jurisdiction."  Id. (internal
quotation marks and citations omitted).  The Court stressed the

importance of being able to easily ascertain the places where a
corporation is subject to jurisdiction; a goal met by these two
locations.  Id.

However, the Court further explained that "in an
exceptional case," "a corporation's operations in a forum other
than its formal place of incorporation or principal place of
business may be so substantial and of such a nature as to render
the corporation at home in that State."  Id. at 761, n.19.
Although, merely "engag[ing] in a substantial, continuous, and
systematic course of business" in a jurisdiction is not
sufficient to render a corporation at home there.  Id. at 761.
As an example of an exceptional situation, the Court cited to
Perkins v. Benguet Consol. Mining Co. which they described as
"the textbook case of general jurisdiction."  Id. at 755-56 &
761, n.19.

In Perkins, the plaintiff filed suit in Ohio against a
Philippine mining corporation.  342 U.S. 437, 438-39 (1952).  At
the time of the suit, the mining corporation had ended all
business activities except for those in Ohio where the president
maintained his office, kept the company files, generally
supervised the company, and from which he wrote business related
correspondences and distributed salary checks.  Id. at 447-48.
The Court concluded that it had general jurisdiction over the
defendant because, as they later explained, "'Ohio was the

corporation's principal, if temporary, place of business.'" Daimler, 134 S. Ct. at 756 (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 780, n.11 (1984)). Thus, an "exceptional case" authorizing general jurisdiction is one in which the defendant's forum contacts are so pervasive that they may substitute for its place of incorporation or principal place of business. See Monkton Ins. Servs., Ltd. v. Ritter, 13-50941, --- F.3d ---, 2014 WL 4799716, at *2 (5th Cir. Sept. 26, 2014) (providing that it is "incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business").

## III. DISCUSSION

As previously noted, there are three categories of defendants that have filed the present motions:  (1) those with no contacts in the Virgin Islands; (2) those that have no contacts themselves but are related to other entities with contacts; and (3) those that have some level of contacts.

### A.   Defendants with no Virgin Islands Contacts

There are six defendants that have no contacts with the Virgin Islands.[3]  Specifically, in addition to being incorporated

---

[3]   These defendants are:  (1) Central Gulf Lines, Inc., see 02-md-875 Doc. 4335; (2) Chas. Kurz & Co., Inc., see 02-md-875 Doc. 4349; (3) Keystone Shipping Co., see 11-45882 Doc. 184; (4) Triton Shipping, Inc., see 11-45890 Doc. 104; (5) Victory Carriers, Inc., see 11-45890 Doc. 105; and (6) Farrell Lines Incorporated, see 02-md-875 Doc. 4534.

and having their principal places of business elsewhere, they
assert that they have never been residents of the forum and:
(1) have no offices and are not licensed to do business; (2)
have no agents or sales staff; (3) own no property of any kind;
(4) do not solicit business or advertise; (5) have no telephone
number; (6) have no bank accounts, loans, or financial ties; and
(7) have never paid taxes, in the Virgin Islands.  These
defendants also assert that they have never owned or operated
vessels in Virgin Islands waters.

In that no plaintiff can allege specific jurisdiction, and
given that these defendants lack any contacts with the forum
through which the Court might establish general jurisdiction, it
is clear that the Court lacks personal jurisdiction over them.
Therefore, their motions will be granted.

Indeed, the plaintiffs do not allege otherwise.  Instead,
in their responses they merely raise several of the arguments
that the Court has considered and rejected in its August 26,
2013 personal jurisdiction opinion.  Bartel, 965 F. Supp. 2d at
622-23.  Specifically, the plaintiffs note the "inherent
complexity of maritime asbestos cases," that transfer of the
cases rather than dismissal would be in the interest of justice,
and that the transferee court is not prohibited from
transferring the cases under Lexecon, Inc. v. Milberg Weiss
Bershad Hynes & Lerach, 523 U.S. 26 (1998).  Id.  The Court

finds no reason why it should depart from its prior rulings on these issues.

### B. Defendants that have no Contacts with the Virgin Islands but Are Related to Other Entities that have Forum Contacts

There are six additional defendants that the plaintiffs allege are either subsidiaries or parents of other companies that have some contacts with the Virgin Islands.[4] The defendants themselves have no actual contacts with the forum and are similarly situated to the six defendants described above.[5]

---

[4] These defendants are: (1) Marine Transport Lines, Inc., <u>see</u> 02-md-875 Doc. 4339; (2) Marine Navigation Company, Inc., <u>see</u> 11-45882 Doc. 185; (3) Marine Sulfur Carriers Corp., <u>see</u> 11-45882 Doc. 186; (4) Pecos Transport, Inc., <u>see</u> 11-45890 Doc. 100; (5) Rover Transport, Inc., <u>see</u> 11-45890 Doc. 101; and (6) American Trading and Production Corporation ("Atapco"), <u>see</u> 11-45885 Doc. 108.

[5] In one response, the plaintiff baldly asserts that Atapco has direct contacts with the Virgin Islands.  <u>See</u> 11-45885 Doc. 115, p. 11 (contending that "[d]efendant and its wholly-owned subsidiary owned and operated vessels in the territorial waters of the U.S. Virgin Islands and those vessels visited the ports or piers in the Territory of the U.S. Virgin Islands. See Exhibit 'A-17'; Exhibit 'A-18' at 6" and "from at least 1956 to 1992, Plaintiffs served on vessels owned and operated by Defendant and its wholly-owned subsidiary to and from the U.S. Virgin Islands and Puerto Rico. <u>See</u> Exhibit 'A-19'; <u>see also</u> Atapco's History, http://www.atapcoproperties.com/about/ history")(emphasis added).  However, these statements are inaccurate in that none of the cited evidence establishes that Atapco ever did any business in, or entered the territorial waters of, the Virgin Islands.  Regardless, even if Atapco did occasionally sail in the forum's waters, such minimal contacts, as discussed below in Section III. C., would be insufficient to confer general jurisdiction.

In order for these defendants to be subject to general jurisdiction in the Virgin Islands based upon the jurisdictional contacts of a related entity, the plaintiffs must show that the defendant "substantially controls and dominates [the entity at issue] so that the independence of the separate corporate entities was disregarded."   Francis v. Bridgestone Corp., CIV. 2010/30, 2011 WL 2650599, at *8 (D.V.I., July 6, 2011) (internal quotation marks and citations omitted). "'[T]he level of control necessary to substantiate an alter ego relationship must exceed the usual supervision that a parent exercises over a subsidiary.'"   Id. at *9 (quoting In re Chocolate Confectionary Antitrust Litig., 674 F. Supp.2d 580, 598 (M.D. Pa. 2009)). Indeed, "'[p]laintiffs must prove that the parent controls the day-to-day operations of the subsidiary such that the subsidiary can be said to be a mere department of the parent.'"   Id. (quoting In re Enter. Rent-A-Car Wage & Hour Emp't Practices Litig, 735 F. Supp.2d 277, 318 (W.D. Pa. 2010)); see also Daimler, 124 S. Ct. at 759 (refusing to directly address the issue but noting that "several Courts of Appeals have held, that a subsidiary's jurisdictional contacts can be imputed to its parent only when the former is so dominated by the latter as to be its alter ego"). Even if the plaintiffs were able to show that the defendants exercise such control over the other entities so that they may be considered the defendant's "alter

egos," they must still establish that the entities' forum contacts are sufficient for general jurisdiction under Daimler. Id. at *8.

The plaintiffs have failed to allege that any of the entities with Virgin Islands contacts are alter egos of the defendants.  They merely state that the defendant is the parent or subsidiary of another entity and then list that entity's forum contacts.  This is insufficient to establish alter ego as the plaintiffs do not contend that the defendants exercise any degree of heightened control over the other entities.  Thus, these motions will also be granted.  Given the plaintiffs' failure to even plead this basic requirement, the Court need not delve into the forum contacts of the related entities.

### C.   Defendants that have Some Direct Contacts with the Virgin Islands

The final six defendants do have some undisputed contacts with the Virgin Islands that are unrelated to the plaintiffs' claims.  However, the Court concludes that none of the defendants can be said to have such substantial and continuous contacts with the Virgin Islands that it is "essentially at home" there as it would be if it were incorporated or had its principal place of business there.  Daimler, 134 S. Ct. at 761 (internal quotation marks omitted).  Thus, the motions of these last six defendants will be granted.

12

In <u>Daimler</u>, two Argentinians filed suit in the United
States District Court for the Northern District of California
against DaimlerChrysler Aktiengesellschaft ("Daimler"), a German
Corporation. <u>Id.</u> at 751. They "alleged that during Argentina's
1976–1983 'Dirty War,' Daimler's Argentinian subsidiary,
Mercedes-Benz Argentina (MB Argentina) collaborated with state
security forces to kidnap, detain, torture, and kill certain MB
Argentina workers." <u>Id.</u> The plaintiffs argued that the Court
had general jurisdiction over Daimler based on the California
contacts of one of its subsidiaries, Mercedes-Benz U.S.A.,
L.L.C. ("MBUSA"), a Delaware corporation with its principal
place of business in New Jersey. <u>Id.</u>

MBUSA, which was the exclusive importer of Mercedes-Benz
vehicles into the United States, had

> multiple California-based facilities, including a
> regional office in Costa Mesa, a Vehicle Preparation
> Center in Carson, and a Classic Center in Irvine.
> According to the record developed below, MBUSA is the
> largest supplier of luxury vehicles to the California
> market. In particular, over 10% of all sales of new
> vehicles in the United States take place in
> California, and MBUSA's California sales account for
> 2.4% of Daimler's worldwide sales.

<u>Id.</u> at 752. For the purposes of their analysis, the Court
assumed MBUSA's contacts were imputable to Daimler under the
Ninth Circuit Court of Appeal's agency test.[6] <u>Id.</u> at 760.

---

[6] Although the Court all but explicitly rejected the agency
test, concluding that it "appear[ed] to subject foreign

Nonetheless, the Court held that all of the forum contacts attributable to Daimler were insufficient to find that it was "at home" in California as it was neither incorporated in the forum nor had its principal place of business there. Id. at 760-62. Immediately below, the Court will describe the forum contacts attributed to these six defendants and explain why the Court lacks jurisdiction over them pursuant to Daimler.

### 1.   TOTE Services, Inc.

First, the plaintiffs seek to establish general jurisdiction over defendant TOTE Services, Inc. ("TOTE Services"). See 11-45890 Doc. 103. They attempt to impute the contacts from its "sister company" Sea Star Line Terminals ("Sea Star") which, along with TOTE Services, is owned by a parent corporation, TOTE, Inc. They also raise some additional direct forum contacts. Specifically, the plaintiffs contend that:

> Defendant, among other things, manages the Sea Star Line fleet. See Exhibit "A-18". Defendant manages a fleet that has port terminals in St. Thomas, St. Croix and Puerto Rico. See Exhibit "A-18"; see also Exhibit "A-19". Defendant's sister company has a local office and phone number in St. Thomas and Puerto Rico. See

---

corporations to general jurisdiction whenever they have an in-state subsidiary or affiliate, an outcome that would sweep beyond even the 'sprawling view of general jurisdiction' we rejected in Goodyear," for argument's sake, they imputed MBUSA's contacts to Daimler since they were still woefully inadequate for general jurisdiction purposes. Daimler, 134 S. Ct. at 759-60.

> Exhibit "A-20". Defendant's sister company is also licensed to do business in the U.S. Virgin Islands, is a member of the St. Thomas – St. John Chamber of Commerce and operates vessels between the U.S. Mainland, Puerto Rico and the U.S. Virgin Islands. See Exhibit "A-8"; Exhibit "A-17"; Exhibit "A-9". Further, according to Defendant, TOTE Services manages the operations of a foreign vessel between Puerto Rico and the U.S. Virgin Islands. See Exhibit "A-10".

11-45890 Doc. 108, pp. 12-13.  Exhibit A-18 indicates that Tote Services' "managed fleet" currently includes the "Sea Star Lines in the Florida trade."  11-45890 Doc. 108-20, p. 4.  Exhibit A-19 merely indicates that Sea Star has terminals on St. Thomas and St. Croix.  11-45890 Doc. 108-21.  Exhibit A-10, the only other exhibit describing TOTE Services' direct forum contacts is its declaration providing that "[b]eginning in February 2008 through approximately 2010, Defendant managed a foreign flag vessel, the M/V SUNSHINE SPIRIT, which operated on a trade route from Peurto [sic] Rico to the Virgin Islands."  11-45890 Doc. 108-10, p. 2.  In that the plaintiffs have failed to allege or prove that Sea Star is the alter ego of Tote Services, Sea Star's contacts may not be imputed to it.

Thus, the Court is left with only two references that TOTE Services managed vessels that docked in the Virgin Islands. Under Daimler, such management alone would not make TOTE Services "at home" in the Virgin Islands as it is not the equivalent of being incorporated in the Virgin Islands or having its principal place of business there.  134 S. Ct. at 760-61.

TOTE Services still lacks any other discernable contacts with the forum. It is a Delaware corporation with a New Jersey principal place of business. Moreover, the plaintiffs do not dispute that the defendant has never been a resident of the Virgin Islands, and has no offices, is not licensed to do business, has no agents or sales people, owns no property, has never solicited business or advertised, has no telephone number, has no bank accounts, loans, or financial ties, and never paid taxes, there. Therefore, the Court concludes that it lacks personal jurisdiction over TOTE Services.

### 2.   Sea-Land Service, Inc.

The plaintiffs also seek to establish general jurisdiction over Sea-Land Service, Inc. ("Sea-land") based on the extent of its forum contacts. See 02-md-875 Doc. 4342. The only evidence provided by the plaintiffs to support this contention is that:

> according to the National Museum of American History, Sea-Land "boasted the world's largest fleet of container ships, had over 18,000 containers in service, and served 22 ports in the U.S., Puerto Rico, the Virgin Islands, the Dominican Republic, Okinawa, and Europe." See Exhibit "A-19" America on the Move: Sea-Land Intermodal Transport. This is circumstantial evidence of Sea-Land's systematic and continuous activity with the Territory of the U.S. Virgin Islands through at least 1966. Id.

02-md-875 Doc. 4417, p. 4. The plaintiffs do not dispute that Sea-Land is a Delaware corporation with a Florida principal place of business that has never been a forum resident, and has

no offices, is not licensed to do business, has no agents or sales people, owns no property, never solicited business or advertised, has no telephone number, has no bank accounts, loans, or financial ties, and has never paid taxes, in the Virgin Islands.  Even if Sea-Land regularly docked at ports in the Virgin Islands, such commerce is still insufficient to establish that it was "at home" there.  Daimler, 134 S. Ct. at 761.  Thus, the Court lacks personal jurisdiction over Sea-Land.

### 3.  American Trading Transportation Company, Inc.

Third, the plaintiffs seek to establish general jurisdiction over American Trading Transportation Company, Inc. ("Attransco").  See 02-md-875 Doc. 4347.  The plaintiffs contend that:

> [a]ccording to Defendant, Attransco, Inc. operated vessels in the territorial waters of the U.S. Virgin Islands and such vessels operated by Attransco, Inc. visited ports or piers in the Territory of the U.S. Virgin Islands.  See Exhibit "A-19," Declaration of Attransco, Inc., p. 2.  Defendant's parent company, American Trading & Production Corporation ("Atapco"), began vessel operations in 1938 with the purchase of its first vessel.  See Atapco's History: 1938 —Atapco Enters the Tanker Business, available at http://www.atapcoproperties.com/about/history; see also Exhibit "A-20," Answers and Objections of Defendant American Trading & Production Corporation to Plaintiffs' Master Interrogatories and Requests for Production, p. 6.  Atapco's first vessel was a fleet member for Atapco as well as Defendant.  See Exhibit "A- 21," Select American Coast Guard Records.  In fact, from at least 1956 to 1992, Plaintiffs served on vessels owned and operated by Atapco and Defendant to and from the U.S. Virgin Islands and Puerto Rico.  Id.

17

02-md-875 Doc. 4424, pp. 3-4.  It is undisputed that in plaintiffs' Exhibit A-19, Attransco admitted that it operated vessels in Virgin Islands waters "on occasion" and that they "visited ports or piers" there.  02-md-875 Doc. 4424-5, p. 2. It is also undisputed that six of the Coast Guard records in plaintiffs' Exhibit A-21 show voyages to or from the Virgin Islands aboard Attransco vessels.  02-md-875 Doc. 4424-7. However, it is equally undisputed that Attransco is a Maryland corporation with a Maryland principal place of business, was never a resident of the Virgin Islands, and has no offices, is not licensed to do business, has no agents or sales staff, owns no property, never solicited business or advertised, has no telephone number, has no bank accounts, loans, or financial ties, and has never paid taxes, there.  Under Daimler, Attransco lacks the type of contacts that would make it at home in the forum.  134 S. Ct. at 760-61.  Therefore, the Court lacks personal jurisdiction over Attransco.

### 4.  Transoceanic Cable Ship Company, LLC.

The fourth defendant in this category is Transoceanic Cable Ship Company, LLC. ("Transoceanic").  See 11-45885 Doc. 111.  In support of their assertion that the Court has general jurisdiction over this defendant, the plaintiffs assert that:

> Transoceanic [sic] Cable Ship Company, Inc. was incorporated in the State of New York on April 27,

1961, and on December 29, 2009, Transoceanic Cable Ship Company, Inc. merged with Transoceanic Cable Ship Company, LLC, a Delaware limited liability company. See Exhibit A-15, Declaration of Transoceanic Cable Ship Company LLC, F/K/A Transoceanic Cable Ship Company, Inc., at ¶ 2. According to Defendant, "Defendant operated vessels in the territorial waters of the U.S. Virgin Islands, and vessels operated by Defendant visited ports, piers or shipyards in the Territory of the U.S. Virgin Islands." Id. at ¶ 9. Moreover, Defendant also acknowledges that "one of these facilities [visited by Defendant's vessels] was leased and operated by a legally separate affiliate of Defendant." Id.

Additionally, it is Plaintiffs' belief the Transocianic [sic] Cable Ship Company, Inc. was a wholly owned subsidiary of AT&T, and the C.S. Long Lines vessel was built for Transoceanic Cable Ship Company. See Exhibit "A-17," History of the Atlantic Cable & Undersea Communications from the first submarine cable of 1850 to the worldwide fiber optic network: CS Long Lines. See Exhibit "A-15," at ¶ 11. It is Plaintiffs' belief the C.S. Long Lines vessel, which Edward Cowart served upon, was instrumental in the laying of the cable line system from Vero Beach, Florida to St. Thomas, U.S. Virgin Islands. See Exhibit "A-17."

11-45885 Doc. 117, pp. 3-4. First, the plaintiffs do not allege that plaintiff Edward Cowart served upon the C.S. Long Lines while it was in Virgin Islands waters. Indeed, as noted by Transoceanic, Mr. Cowart sailed on that vessel from December 3, 1977 to December 10, 1977 on a voyage leaving from and returning to Honolulu, Hawaii. 11-435885 Doc. 111-2, p. 2. Like Attransco, the only direct contact this defendant had with the Virgin Islands is that it operated vessels in their territorial waters and docked there. Thus, Transoceanic lacks contacts that

are so substantial that it is "essentially at home in the forum State." Daimler, 134 S. Ct. at 761 (internal quotation marks omitted).  It is a New York corporation with a New Jersey principal place of business and it has never been a resident of the Virgin Islands.  Moreover, according to Transoceanic, it has no offices, is not licensed to do business, has no agents or sales people, owns no property, has not solicited business or advertised, has no telephone number, has no bank accounts, loans, or financial ties, and has never paid taxes, in the Virgin Islands.  Even if the defendant regularly sailed in Virgin Islands waters, that contact would not be sufficient to establish general jurisdiction over it under Daimler.  See id. (providing that "engag[ing] in a substantial, continuous, and systematic course of business" is not sufficient to render a corporation at home in a given jurisdiction).  Under the circumstances, the Court lacks personal jurisdiction over Transoceanic.

### 5. Amerada Hess Corp.

The fifth defendant over which the plaintiffs assert that general jurisdiction exists is Amerada Hess Corp. ("Amerada Hess").  See 02-md-875 Doc. 4536.  In support of their argument, they contend that:

> according to Hess Corporation's website, Defendant constructed a large refinery on St. Croix starting in 1966.  See Exhibit "A-5," History of Hess Corporation.

20

> As part of its agreement with the U.S. Virgin Islands government, Defendant negotiated a tax benefits package. See Exhibit "A-6," 1965 V.I. Sess. Laws 489. In particular, Defendant agreed to build the refinery on 400 acres of private land with an initial investment of $10 million and 125 employees. Id. Throughout the years, Hess acquired more land and the refinery was expanded to more than 2,000 acres. See Exhibit "A-7," Duff & Phelps Report, Highest and Best Use of the HOVENSA Refinery, Aug. 3, 2012, p. 11. Furthermore, Defendant 's subsidiary is licensed to do business in the U.S. Virgin Islands. See Exhibit "A-18," U.S. Virgin Islands Department of Licensing and Consumer Affairs License Search.

02-md-875 Doc. 4604, p. 4. The defendant admits that it has a facility in the Virgin Islands.[7] 02-md-875 Doc. 4615, p. 2. However, it claims that it is not at home in the forum because it is a Delaware corporation with a New York principal place of business. The Court agrees. Establishing one refinery in the forum – one of many that the defendant owned – is not equivalent to its place of incorporation or principal place of business. Daimler, 134 S. Ct. at 762 n.20 (providing that "[g]eneral jurisdiction [ ] calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide. A corporation that operates in many places can scarcely be deemed at home in all of them"). Moreover, in that the plaintiffs have failed to allege that the defendant's subsidiary is merely an alter ego, it's contacts with the forum may not be imputed to

---

[7] The Plaintiffs' Exhibits A-5 and A-7 indicate that Amerada Hess closed the refinery in early 2012 and now uses it as an oil storage terminal. 02-md-875 Docs. 4604-5, 4604-7.

Amerada Hess.   Thus, the Court lacks personal jurisdiction over

Amerada Hess.

### 6.   Alcoa Steamship Company, Inc.

The final defendant that the plaintiffs allege has

sufficient ties to the forum to establish general jurisdiction

is Alcoa Steamship Company, Inc. ("Alcoa").   See 11-45890 Doc.

99.   Like Amerada Hess, Alcoa has had significant contacts with

the Virgin Islands over the years.   However, given the Supreme

Court's reluctance to extend general jurisdiction as well as the

staleness of many of the contacts, the Court concludes that it

lacks jurisdiction over Alcoa.   In support of their position,

the plaintiffs assert that:

> [a]ccording to Defendant, Defendant has been licensed
> or registered to do business in the Territory of the
> U.S. Virgin Islands since January 28, 1947.   See
> Exhibit "A-17," Declaration of Alcoa Steamship
> Company, Inc.   Defendant also has an agent for service
> of process in the U.S. Virgin Islands.   Id.   Defendant
> has vessel operations in the territorial waters of the
> U.S. Virgin Islands.   Id.   Defendant's vessels also
> visited ports, piers, or shipyards in the Territory of
> the U.S. Virgin Islands.   Id.   Furthermore, Defendant
> may have paid taxes in the U.S. Virgin Islands.   See
> Exhibit "A-18," Answers and Objections of Defendant
> Alcoa Steamship Company, Inc. to Plaintiffs' Master
> Interrogatories and Requests for Production, p. 21-22.
>
> Additionally, Defendant has advertised and solicited
> in the U.S. Virgin Islands.   See Exhibit "A-19,"
> Endeavoring To Promote Post-War Trade Between Mainland
> and St. Thomas, THE VIRGIN ISLANDS DAILY NEWS, Aug. 1,
> 1944, at 4; Exhibit "A-20," Direct Sailing from St.
> Thomas to New York, THE VIRGIN ISLANDS DAILY NEWS,
> Sept. 7, 1948, at 5; Exhibit "A-21," Sailings from New
> York, THE VIRGIN ISLANDS DAILY NEWS, April 29, 1952,

at 2; Exhibit "A-22," <u>Sailings from Baltimore to New York</u>, THE VIRGIN ISLANDS DAILY NEWS, April 21, 1953, at 3; Exhibit "A-23," <u>Every Day is Play Day on an Alcoa Ship in the Caribbean</u>, TIME MAGAZINE, Sept. 15, 1947.

Defendant has had a local office, telephone numbers, and employees in the U.S. Virgin Islands.  <u>See</u> Exhibit "A-24," <u>Alcoa Announces Opening of New Office Here</u>, THE VIRGIN ISLANDS DAILY NEWS, Oct. 31., 1947, at 1; Exhibit "A-25," <u>New Luxury Passenger Service to St. Thomas</u>, THE VIRGIN ISLANDS DAILY NEWS, March 13, 1941, at 1 ("The local office of the Alcoa Steamship Company announced today that the luxury liners 'Acadia' and 'St. John'. . . had been acquired by Alcoa . . ..");  Exhibit "A-26," <u>Sailing for New York</u>, THE VIRGIN ISLANDS DAILY NEWS, Aug. 10, 1950, at 3 ("Local Office: 14 Queen Street"); Exhibit "A-27," <u>Rerouting of Alcoa Freighter Hampers Firms</u>, THE VIRGIN ISLANDS DAILY NEWS, Dec. 28, 1964, at 11 ("the local Alcoa office declined to give further details saying that additional information would have to come from their New York office."); and <u>Tebbs v. Alcoa Steamship Company, Inc.</u>, 241 F.2d 276 (3d Cir. 1957) (Judgment affirmed for Plaintiff in negligence action against Defendant Alcoa Steamship Company for Plaintiff's fall in Defendant's office in Charlotte Amalie, St. Thomas, Virgin Islands.).   Moreover, Defendant's parent company owned and operated a refinery in the U.S. Virgin Islands.   <u>See</u> Aluminum Company of America, Annual Report (Form 10-K) (March 11, 1996), available at http://www.sec.gov/Archives/edgar/data/4281/ 0000004281-96-000005.txt.

11-45890 Doc. 112, pp. 4-5.

Alcoa's contacts with the Virgin Islands, as described by the plaintiffs, may be grouped and summarized in the following manner:  (1) it is currently licensed to do business and has an agent for service of process in the forum; (2) it sails vessels in Virgin Islands waters and docks at their ports; (3) it may have paid taxes there; (4) between 1944 and 1953 it occasionally

ran newspaper advertisements regarding its cruises to the Virgin Islands; and (5) from 1941 to 1964 it had local offices in the forum.[8]  Many of Alcoa's contacts are over fifty years old. These are of little consequence in determining whether it currently has sufficient jurisdictional contacts in the forum as:

> "[a] nonresident defendant corporation which has had past contacts with a forum state, even if those contacts were substantial, may not be found subject to the general jurisdiction of the forum and thus answerable to claims unrelated to these past contacts unless it presently continues to have substantial contacts with the forum state."

Simons v. Arcan, Inc., CIV. A. 12-01493, 2013 WL 1285489, at *3 (E.D. Pa. Mar. 28, 2013) (quoting Gregoire v. Schleicher & Co. Int'l, AG, CIV. A. 90-4720, 1991 WL 168644, at *4 (E.D. Pa. Aug. 22, 1991).

Alcoa's remaining contacts:  that it is licensed to do business in the forum; has an agent for service; and sails vessels in Virgin Islands waters and docks at their ports, may even show a "substantial, continuous, and systematic course of business." Daimler, 134 S. Ct. at 761.  However, this alone is not enough to establish that Alcoa "is fairly regarded as at

---

[8]  Plaintiff also mentions that Alcoa's parent company operated a refinery in the Virgin Islands but fails to allege that Alcoa had such extensive control over its parent that it was merely an alter ego.  As discussed previously, without asserting and proving the alter ego theory, the parent's jurisdictional contacts may not be imputed to Alcoa.

home" in the forum.  Id. at 760-61; see also Helicopteros, 466

U.S. at 416-18  (providing, inter alia, that even regular

purchases from a Texas helicopter manufacturer and sending

personnel for connected training was insufficient to establish

general jurisdiction).  Alcoa is a New York corporation with a

Pennsylvania principal place of business.  It claims never to

have been a resident of the Virgin Islands and currently has no

offices, agents, property, telephone numbers, and no bank

accounts, loans, or financial ties, there.  While the Supreme

Court in Daimler did not limit general jurisdiction strictly to

the defendant's corporate home or principal place of business,

it made clear that jurisdiction would otherwise lie only in "an

exceptional case."  Id. at 761, n.19.  Alcoa's contacts with the

forum are not so significant that they could substitute for its

place of incorporation or principal place of business.  Thus,

the Court lacks personal jurisdiction over Alcoa.

**IV.   CONCLUSION**

The plaintiffs do not allege, and cannot allege, that the

Court has specific jurisdiction (based on the long-arm statute

or constitutional due process) over any of the defendants as

their claims do not arise from the defendants' activities in the

Virgin Islands.  The plaintiffs also have failed to adequately

plead facts which would allow the Court to exercise general

jurisdiction over any of these defendants under the restrictive

holding in <u>Daimler</u>.  As a result, all of the defendants' motions to dismiss listed on Exhibit A will be granted.

An appropriate order follows.

**Exhibit A**

| Case Number | District | Caption | Filed by | Doc. No. |
|---|---|---|---|---|
| 11-45882 | VI | Culpepper v. Foster Wheeler Co. et al | Central Gulf Lines Steamship<br>Central Gulf Lines, Inc. | 183 |
| 11-45882 | VI | Culpepper v. Foster Wheeler Co. et al | Keystone Shipping Company | 184 |
| 11-45882 | VI | Culpepper v. Foster Wheeler Co. et al | Marine Navigation Company | 185 |
| 11-45882 | VI | Culpepper v. Foster Wheeler Co. et al | Marine Sulphur Carriers Corp. | 186 |
| 11-45882 | VI | Culpepper v. Foster Wheeler Co. et al | Marine Transport Lines Inc. | 187 |
| 11-45882 | VI | Culpepper v. Foster Wheeler Co. et al | Pan Atlantic Steamship Co. | 188 |
| 11-45882 | VI | Culpepper v. Foster Wheeler Co. et al | American Trading Transp. Co. | 189 |
| 11-45882 | VI | Culpepper v. Foster Wheeler Co. et al | Hess Oil & Chem. Corp. | 190 and 209 |
| 11-45885 | VI | Cowart v. Foster Wheeler Co. et al | American Trading & Production Corp. | 108 |
| 11-45885 | VI | Cowart v. Foster Wheeler Co. et al | Central Gulf Lines Steamship | 109 |
| 11-45885 | VI | Cowart v. Foster Wheeler Co. et al | Marine Transport Lines Inc. | 110 |
| 11-45885 | VI | Cowart v. Foster Wheeler Co. et al | Transoceanic Cable Ship Company, Inc. | 111 |
| 11-45885 | VI | Cowart v. Foster Wheeler Co. et al | Hess Oil & Chem. Corp. | 112 and 132 |
| 11-45885 | VI | Cowart v. Foster Wheeler Co. et al | Farrell Lines Incorporated | 113 and 114 and 130 |
| 11-45886 | VI | Eaton v. Foster Wheeler Co. et al | Central Gulf Lines Steamship | 94 |
| 11-45886 | VI | Eaton v. Foster Wheeler Co. et al | Marine Transport Lines Inc. | 95 |
| 11-45886 | VI | Eaton v. Foster Wheeler Co. et al | American Trading Transp. Co. | 96 |
| 11-45886 | VI | Eaton v. Foster Wheeler Co. et al | Charles Kurz & Company Inc. | 97 |
| 11-45886 | VI | Eaton v. Foster Wheeler Co. et al | Farrell Lines Incorporated | 98 and 113 |
| 11-45888 | VI | Clement v. Foster Wheeler Co. et al | Charles Kurz & Company, Inc. | 89 |

| 11-45890 | VI | Caudill v. Foster Wheeler Co. et al | Alcoa Steamship Company, Inc. | 99 |
| 11-45890 | VI | Caudill v. Foster Wheeler Co. et al | Pecos Transport Inc. | 100 |
| 11-45890 | VI | Caudill v. Foster Wheeler Co. et al | Penn Tanker Corp. | 101 |
| 11-45890 | VI | Caudill v. Foster Wheeler Co. et al | Sea-Land Service Inc. | 102 |
| 11-45890 | VI | Caudill v. Foster Wheeler Co. et al | Interocean Management Corp. | 103 |
| 11-45890 | VI | Caudill v. Foster Wheeler Co. et al | Triton Shipping Inc. | 104 |
| 11-45890 | VI | Caudill v. Foster Wheeler Co. et al | Victory Carriers Inc. | 105 |